NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3990
_____

PRECISION PIPELINE, LLC,

Appellant

v.

TRICO SURVEYING AND MAPPING, INC.;
G-A-I CONSULTANTS, INC.
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(2-13-cv-01823)
U.S. District Judge: Honorable Cathy Bissoon
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 12, 2017

Before:  VANASKIE, RENDELL and FISHER, *Circuit Judges*.

(Filed:  October 24, 2017)
_____

OPINION*
_____

FISHER, *Circuit Judge*.

---

    * This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Precision Pipeline, LLC appeals the District Court's grant of summary judgment to Trico Surveying and Mapping, Inc. and G-A-I Consultants, Inc. We will affirm.

I.

Non-party Dominion Transmission, Inc., wanted to build a natural gas pipeline. Dominion hired Trico to survey and map the pipeline route, and it hired G-A-I for environmental consulting services. Dominion provided Trico's drawings to contractors bidding to build the pipeline. Precision was the successful bidder.

The cost of building a pipeline is affected by the number of "foreign crossings," that is, existing utility lines and pipelines that must be crossed along the route. The Dominion-Trico contract required Trico to note on its drawings the locations of above-ground foreign crossings, plus underground foreign crossings that could be identified by an above-ground flag or marker. The Dominion-G-A-I contract required G-A-I to add information to Trico's drawings, but not foreign crossing information.

Knowing that the drawings did not identify all the foreign crossings, Precision said to Dominion in the letter accompanying its bid: "We suspect there may be some quantity of unknown pipelines to cross . . . . We propose that, should Precision be the successful bidder, we negotiate a crossing price for unknown lines prior to the start of construction." However, Dominion and Precision did not do so, either before or after construction began. Ultimately, Precision encountered 357 foreign crossings—far more than the 89 depicted on Trico's drawings. This significantly increased Precision's costs.

Precision sued Trico and G-A-I for negligent misrepresentation in preparing the bid drawings. The District Court granted the defendants' motions for summary judgment and entered judgment in their favor.

## II.

The District Court had diversity jurisdiction.[1] We have jurisdiction over this appeal because the order granting summary judgment was a final order.[2] "We review a district court's grant of summary judgment de novo, applying the same standard as the district court."[3] Viewing the facts in the light most favorable to the non-movant, we affirm if there is no genuine issue of fact and the movant is entitled to judgment as a matter of law.[4]

All parties apply Pennsylvania law, as did the District Court. We do the same.

## III.

The District Court concluded that the defendants did not owe Precision a duty under Pennsylvania law, that Precision's suit was untimely, and that no reasonable jury could find that Precision justifiably relied on Trico's drawings. Precision takes issue with each of those rulings, but we need only reach the first.

---

[1] 28 U.S.C. § 1332(a).

[2] 28 U.S.C. § 1291.

[3] *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 256 (3d Cir. 2013).

[4] *Id.*; Fed. R. Civ. P. 56.

Precision had no contractual relationship with Trico or G-A-I. It therefore sued them under the theory articulated in Section 552 of the Restatement (Second) of Torts, which the Pennsylvania Supreme Court adopted in *Bilt-Rite Contractors, Inc. v. The Architectural Studio*.[5] There, the tort of negligent misrepresentation was extended, in a "narrowly tailored" fashion, to "businesses which provide services and/or information that they know will be relied upon by third parties in their business endeavors."[6] The parties agree that Trico's and G-A-I's contracts with Dominion did not require identification of underground foreign crossings. Precision argues that nevertheless, the defendants owed Precision, as a foreseeable user of the drawings, a duty to identify 85% of above- and below-ground foreign crossings (which Precision says is the industry standard). The key question here, then, is whether Trico and G-A-I owed Precision a duty to identify 85% of the foreign crossings, even though their contracts with Dominion did not require them to do so.

The District Court analyzed the factors relevant to determining whether there is a common law duty—including the nature of the risk, the foreseeability of the harm, and the consequences of imposing liability—and determined that the defendants did not owe Precision a duty under *Bilt-Rite*. Precision argues that by considering these factors, the District Court erroneously supplanted *Bilt-Rite*'s duty analysis with its own. We disagree.

---

[5] 866 A.2d 270 (Pa. 2005).
[6] *Id.* at 285 ("formally adopt[ing] Section 552 of the Restatement (Second) [of Torts]").

4

The District Court did not err when it analyzed the common law duty factors in considering whether to extend *Bilt-Rite* to this situation—where the plaintiff seeks to impose duties on the maker of the information that are different than the duties imposed by the operative contract. *Bilt-Rite* itself establishes that Section 552 does not "supplant[] the common law tort of negligent misrepresentation," but instead "clarif[ies] the contours of the tort as it applies to those in the business of providing information to others."[7] Indeed, *Bilt-Rite* examined the common law duty factors as part of its analysis supporting the adoption of Section 552,[8] and the District Court did not err by following the same analytical path.

Nor did the District Court err in concluding there was no duty. In *Bilt-Rite*, the Pennsylvania Supreme Court held that a design professional (there, an architect) may, "in the absence of privity of contract[,] . . . be sued by a general contractor . . . for economic loss foreseeably resulting from breach of an architect's common law duty of due care in the performance of his contract with the owner."[9] Thus, the design professional's liability to the contractor arises from the design professional's breach of its contract with the owner. Even Precision's authorities support this logical limit to *Bilt-Rite*'s narrowly

---

[7] *Id.* at 287.

[8] *Id.*

[9] *Id.* at 286 (quoting and adopting reasoning of *Davidson & Jones, Inc. v. County of New Hanover*, 255 S.E.2d 580, 584 (N.C. App. 1979)).

5

tailored liability theory.[10] Moreover, Precision cites no Pennsylvania case endorsing its expansive view of *Bilt-Rite*, under which design professionals who sign a contract with a property owner would thereby assume duties of unknown scope owed to third-party contractors.

Precision also argues that the District Court erred in ruling that its lawsuit was barred by the statute of limitations, and in determining that there was no factual issue regarding justifiable reliance. We need not reach those issues. Even if Precision were correct, affirmance would still be required, because Precision's liability theory under *Bilt-Rite* is fundamentally flawed.

IV.

For the reasons set forth above, we will affirm.

---

[10] For example, Precision cites an illustration in the Restatement where a city hires an engineering firm to produce reports, the reports are relied on by contractors submitting bids, and the engineering firm is liable to the contractors because it "negligently prepare[d] and deliver[ed] to the City an inaccurate report, containing false and misleading information." Restatement (Second) of Torts § 552 (1977), illus. 9. Negligently producing inaccurate, false, and misleading reports would of course breach the engineering firm's contract with the city.